UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KEITH COOLEY, ET. AL.** | **:** | **CIVIL ACTION NO. 14-cv-987** |
| **VERSUS** | **:** | **JUDGE WALTER** |
| **AEROFRAME SERVICES, LLC, ET. AL.** | **:** | **MAGISTRATE JUDGE KAY** |

REPORT AND RECOMMENDATION
ON MOTION FOR SUMMARY JUDGMENT
FILED BY PLAINTIFFS AGAINST AEROFRAME [Doc. 77]

By order of this court issued in Ashford v. Aeroframe, et. al, 19-cv-610 ("*Ashford* 2"), the lead case into which this case and others were previously consolidated[1], the plaintiffs in this matter were instructed as follows:

> On or before close of business on March 26, 2021, the plaintiffs named in the original member case of *Cooley, et al v. Aeroframe Services, LLC, et al* docket number 14-cv-987, are to file Motions for Summary Judgment with respect to their claims for wages, penalties and attorney fees against Aeroframe Services, LLC, ["Aeroframe"] as set forth in their original complaint. Failure to file for Summary Judgment as ordered herein will result in a Report and Recommendation being submitted recommending the matters be dismissed for failure to prosecute.

19-cv-610 (*Ashford 2*), doc. 104[2]. Those plaintiffs did file a Motion for Summary Judgment. Doc. 77. The motion is opposed by Aeroframe. Doc. 80. The period allotted for filing a reply to the

---

[1] See doc. 83.
[2] There truly exists no controversy between the plaintiff-employees and Aeroframe and there never has been. See Ashford v. Aeroframe Services, LLC, docket no. 19-cv-610 of this court (*"Ashford 2"*), doc. 62 adopted by the district court at doc. 69 (plaintiff-employees have "been but a pawn in this matter. *Id,* doc. 62, p. 21. Somer Brown and Thomas Filo have represented Roger Porter, principal for Aeroframe, since before this litigation began and have been active participants in a ruse to keep this conflict in a state court of their choosing by keeping plaintiff-employees unnecessarily involved in this litigation, vexatious behavior that has led to their being sanctioned by this court. See Ashford v. Aeroframe Services, LLC, docket no. 14-cv-992 ("*Ashford 1"*) doc. 283, adopted by the district court at doc. 294.

opposition has now passed and the matter is ripe for adjudication. Considering the evidence submitted by the parties and the memoranda submitted and for reasons set forth below, it is

**RECOMMENDED** that the motion be **GRANTED** in part, and that judgment be rendered herein in favor of the following plaintiffs against defendant in the following amounts:

(1) In favor of *KEITH COOLEY* and against *AEROFRAME SERVICES, LLC,* in the full and true sum of *THIRTY-THREE THOUSAND THREE HUNDRED AND THIRTY-THREE AND 33/100 ($33,333.33) DOLLARS*, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,500.00, a penalty of $22,500.00, and attorney fees of $8,333.33;

(2) In favor of *KOURIE DONAHOO* and against *AEROFRAME SERVICES, LLC,* in the full and true sum of *NINETEEN THOUSAND SIX HUNDRED AND TWENTY-SIX AND 67/100 ($19,626.67) DOLLARS*, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,472.00, a penalty of $13,428.00, and attorney fees of $4,906.67;

(3) In favor of *DONALD R. HEBERT* and against *AEROFRAME SERVICES, LLC,* in the full and true sum of *THIRTY-EIGHT THOUSAND FOUR HUNDRED AND FORTY-TWO AND 67/100 ($38,442.67) DOLLARS*, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,883.20, a penalty of $25,948.80, and attorney fees of $9,610.67;

(4) In favor of *JAKE MANISCALCO* and against *AEROFRAME SERVICES, LLC,* in the full and true sum of *THIRTY-EIGHT THOUSAND FOUR HUNDRED AND TWENTY AND 05/100 ($38,420.05) DOLLARS*, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,881.54, a penalty of $25,933.50, and attorney fees of $9,605.01;

(5) In favor of *ELMER NICK, JR.* and against *AEROFRAME SERVICES, LLC,* in the full and true sum of *TWENTY-SIX THOUSAND FIVE HUNDRED SIX AND 67/100 ($26,506.67) DOLLARS*, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,988.00, a penalty of $17,892.00, and attorney fees of $6,626.67;

(6) In favor of *ROGER PARIS* and against *AEROFRAME SERVICES, LLC,* in the full and true sum of *TWENTY-SIX THOUSAND SIX HUNDRED AND SIXTY-SIX AND 67/100 ($26,666.67) DOLLARS*, with judicial interest thereon from date of judicial demand until paid,

representing unpaid wages in the amount of $2,000.00, a penalty of $18,000.00, and attorney fees of $6,666.67;

(7) In favor of **JASON SOILEAU** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **TWENTY-FIVE THOUSAND AND NINETY-THREE AND 33/100 ($25,093.33) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,888.00, a penalty of $16,992.00, and attorney fees of $6,293.33;

(8) In favor of **TERRA SOILEAU** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **SEVENTEEN THOUSAND NINE HUNDRED SEVENTY-THREE AND 33/100 ($17,973.33) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,348.00, a penalty of $12,132.00, and attorney fees of $4,493.33;

(9) In favor of **JOHN UPMEYER** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **TWENTY-NINE THOUSAND AND SIXTY-SIX AND 67/100 ($29,066.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,180.00, a penalty of $19,620.00, and attorney fees of $7,266.67;

(10) In favor of **KARL WARD** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **SEVENTEEN THOUSAND AND SIXTY-SIX AND 67/100 ($17,066.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,280.00, a penalty of $11,520.00, and attorney fees of $4,266.67;

(11) In favor of **JONATHAN WILSON** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **SEVENTEEN THOUSAND THREE HUNDRED THIRTY-THREE AND 33/100 ($17,333.33) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,300.00, a penalty of $11,700.00, and attorney fees of $4,333.33;

It is further **RECOMMENDED** that the court **DENY** plaintiff Eric Martin's Motion for Summary Judgment, as he fails to meet his initial burden of establishing a lack of a genuine issue for trial. We recommend this denial be without prejudice to his right reassert his request for summary judgment again but we will today issue an order that the submission must be made within

fifteen (15) days of the date of this Report and Recommendation or face recommendation of dismissal of the claim for failure to prosecute.

# I.
### BACKGROUND

The original lawsuit was filed September 24, 2013, in the 14th Judicial District Court, Calcasieu Parish, Louisiana. Plaintiffs, represented by attorney Somer G. Brown ("Brown") of the law firm of Cox, Cox, Filo, Camel & Wilson ("the Cox Firm"), all former employees of Aeroframe ("plaintiff-employees"), sued Aeroframe for wages, penalties and attorney fees owed, they claimed, pursuant to the Louisiana Last Paycheck Law, La. R.S. 23:631, *et. seq.* Doc. 1, att. 1, p. 3, ¶¶ 14-15. Each plaintiff-employee claimed he or she was owed wages when Aeroframe ceased operations and closed its doors on August 9, 2013. *Id.* at p. 2 ¶¶ 4-5, p. 3 ¶¶ 14-15. Aeroframe answered the complaint denying plaintiffs' claims for wages, penalties, and attorney fees. Doc. 1, att. 1, p. 131 ¶¶ 4-5, p. 132, ¶¶ 14-15.

Plaintiff-employees also sued Aviation Technical Services, Inc. ("ATS") seeking recovery for damages they claim to have suffered from alleged nefarious conduct perpetrated by ATS toward them, Aeroframe, and Roger A. Porter ("Porter") on whose behalf Aeroframe existed as an alter-ego.[3] The gist of the alleged nefarious conduct need not be repeated here and can be found in the plaintiffs' complaint. We occasionally refer to the plaintiff-employees, Aeroframe, and Porter collectively as "the non-ATS litigants."

---

[3] Through the protracted course of the litigation between ATS and the plaintiff-employees, Aeroframe, and Porter we have concluded there is "no daylight between Porter and Aeroframe." 19-cv-610, *Ashford 2*, doc. 62, p. 7 (Report and Recommendation on Motion to Remand filed in *Ashford 2*, adopted by the district court at doc. 69). Plaintiff-employees and Porter are represented by the same attorneys, i.e. the Cox firm. These parties are aligned and have been since inception of the litigation. *Ashford 2*, id. See also fn. 2.

This suit is one of ten separate lawsuits in four parishes, all of which were removed to this court on May 14, 2014.[4] Prior to removal, Brown issued a notice of corporate deposition to be held in Lake Charles, Louisiana. Doc. 1, att. 1, p. 25. ATS moved for a protective order [doc. 1, att. 1, p. 30] and, from the records available, it appears a conference was had with the state district court and ATS was successful in arguing the inappropriateness of having Washington-based witnesses compelled to appear in Louisiana for depositions as, two days following the conference, plaintiffs issued an amended notice for the depositions to be held in Seattle on March 26, 2014. Doc 1, att. 1, p. 140.

After the depositions had taken place and after ATS came into possession of an email sent by Brown to all her employee-clients[5], ATS removed. Once in this court, Brown (with the assistance of counsel for Aeroframe and Porter) chose to use the *Ashford 1* case (14-cv-992) as its bellwether. In *Ashford 1* the non-ATS litigants moved to remand, their motions were denied, the Fifth Circuit reversed, and *Ashford 1* was remanded (except for the Motion for Sanctions that had been filed by ATS which has yet to be fully resolved) only to be removed again and assigned docket number 19-cv-610 ("*Ashford 2*"). For a full discussion of the events involving these litigants through *Ashford 1* and the recommendation of denial of the second motions to remand filed by the non-ATS litigants, see document 62 of *Ashford 2*, adopted by the district court at document 69.

---

[4] 14-cv-983 (Warner from Cameron Parish) at doc. 1; 14-cv-984 (Adams from Calcasieu Parish) at doc. 1; 14-cv-985 (Boring from Calcasieu Parish) at doc. 1; 14-cv-986 (Cleaves from Calcasieu Parish) at doc. 1; 14-cv-987 (Cooley from Calcasieu Parish) at doc. 1; 14-cv-988 (Gallow from Calcasieu Parish) at doc. 1; 14-cv-989 (Decolongon from Calcasieu Parish) at doc. 1; 14-cv-990 (Blanton from Calcasieu Parish) at doc. 1; 14-cv-991 (Rackard from Beauregard Parish) at doc. 1; and 14-cv-992 (*Ashford 1* from Evangeline Parish) at doc. 1. Four other cases were filed by Brown on behalf of former Aeroframe employees after the removal of these initial cases and those four cases were also subsequently removed. They are 14-cv-2323 (Morvant from Jefferson Davis Parish), 14-cv-2324 (Coley from Calcasieu Parish), 14-cv-2325 (Cogdill from Calcasieu Parish), and 14-cv-2538 (Barreda from Calcasieu Parish).
[5] This email is referred to throughout the Ashford proceedings as the "Brown email" and is found in this record at doc. 1, att 4.

Once we determined we did have subject matter jurisdiction in *Ashford 2*, we granted a motion filed by ATS to have all cases consolidated for further proceedings. 19-cv-610, doc. 87. That order included this case. All motions pending in all consolidated cases were terminated without prejudice to any litigant to re-urge the motions in the consolidated case. ATS filed a Motion for Summary Judgment seeking dismissal of all claims against it by all non-ATS litigants, including the plaintiffs in this litigation. 19-cv-610, doc. 92. Over (identical) objections of the non-ATS litigants, we recommended that motion be granted. 19-cv-610, doc. 111. Each non-ATS litigant objected to that recommendation (on identical grounds). The district court has now adopted that recommendation. 19-cv-610, doc. 119.

But there remains the issue (or non-issue) of the plaintiff-employee claims made against Aeroframe. In our recent Report and Recommendation on ATS's Motion for Summary Judgment in *Ashford 2* (19-cv-610, doc. 111, adopted by the district court at 119), we discussed the fact that plaintiff Ashford had moved for summary judgment on his wage claim in *Ashford 1* (14-cv-992). As we noted in the *Ashford 2* Report and Recommendation:

> The district court denied Ashford's motion as moot, finding that "any claims among Ashford, Aeroframe and Porter" had already been resolved. *Id*. at doc. 104, p. 2. The court referred to its previous ruling on a Motion to Remand which found that the parties were aligned. *Id*., p. 4. The court noted that Ashford signed a conflict waiver that would allow the Cox Firm to represent both Ashford and Porter in the same litigation. *Id*., p. 2. Additionally, the court referenced an email from Brown explaining the waiver, which "affirmatively stated that Aeroframe would not defend against the wage claims."54 *Id*. It found Aeroframe's "opposition" to be "better read as a confirmation of [the agreement proposed by the Brown email] than an actual opposition to the motion." *Id*., p. 3. The district court concluded that Ashford's motion for summary judgment was merely an attempt to re-litigate the issue of subject matter jurisdiction, and therefore dismissed the motion as moot. *Id*., p. 4.

. We expressed our understanding of how the court initially reached that conclusion. We went on to state:

> No doubt the court assumed that at some point non-Ashford counsel would relinquish the ruse that the non-Ashford parties were adverse and that Brown would follow through on the promises made to her clients in her email that Aeroframe counsel would stipulate to their "entitlement to wages, penalties, and attorney's fees . . . ." Doc. 46, att. 40, p. 3. It has been nearly seven years since this litigation began and counsel continues to perpetuate the scam for the sole benefit of Porter and themselves, undoubtedly with the hopes that they can again delude a higher court to believe we lack subject matter jurisdiction. Ashford deserves to have at least a document validating his claim for wages, penalties, and attorney fees.

*Ashford 2, id.,* at 43-44 (footnote omitted). And the district court in *Ashford 2* agreed it should be so. *Ashford 2,* doc. 119.

In the same spirit of wanting to give these plaintiff-employees that which they do deserve, whether they may collect on it or not, and to put a period on this farce we issued the order quoted on page 1 of this document. But then, in a most stunning and miraculous moment of truth from counsel for plaintiff-employees, plaintiffs moved to certify the judgment rendered in this matter, alleging that the court's judgment accepting the Report and Recommendation quoted above (found in this record at doc. 81, judgment adopting at doc. 82) that the court's "recent judgment, resolves each and every claim of the Plaintiffs in the consolidated cases – dismissing their claims against ATS and granting their claims against Aeroframe – leaving no issue to be determined with respect to the original Plaintiffs." Doc. 85, p. 1. The moment was brief, however. Although counsel has not retracted the statement, she continues to assert these claims remain alive. See Doc. 91. So we persist.

## II.
### APPLICABLE LAW

### A. Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S. Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

When, however, a movant satisfies its burden of showing there is no genuine dispute of material fact, the nonmovant must demonstrate there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994). Local Rule 56.1 requires a movant to file a statement of materials facts to which it contends there is no genuine issue to be tried. In response thereto an

opponent of the motion must file a separate, short, and concise statement of the material fact as to which there exists a genuine issue to be tried.  W.D.La.R. 56.2.  Any material fact listed by the moving party will be admitted for purposes of the motion "unless controverted as required by this rule."  *Id.*  A non-movant may not meet its burden of proving there does exist a genuine issue for trial by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence."  *Little*, 37 F.3d at 1075.

### B. The Louisiana Last Paycheck Law

Louisiana Revised Statutes § 23:631 *et. seq.*, collectively referred to as Louisiana's "Last Paycheck Law," require that upon an employee's discharge, the employer must pay "the amount then due under the terms of employment … on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first." La. R.S. § 23:631(A)(1)(a). In order to recover pursuant to § 23:632—the penalty section of the statute—a plaintiff must prove that "(1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Clay Heath v. Workforce Grp. LLC*, No. 20-839, 2020 WL 4515210, at *2 (W.D. La. Aug. 5, 2020) (citing *Becht v. Morgan Building & Spas, Inc.,* 843 So.2d 1109, 1112 (La. 2003)).  At the time this lawsuit was filed, the Louisiana Last Paycheck Law provided no "good faith exception" for the imposition of penalties so that the circumstances of the defendant's non-payment were of no moment.[6]

Here, the penalty for failure to comply with § 23:631 would be "ninety days wages at the employee's daily rate of pay." La. R.S. § 23:632(A).  When an employer files a general denial of liability to a plaintiff's suit for unpaid wages, the employer waives any technical deficiencies in pre-suit demand. *Monroe Firefighters Ass'n v. City of Monroe*, 6-1092, 2009 WL 805132, at *7

---

[6] The statute has since been amended to allow for a "good faith exception" to imposition of penalties.  *Compare* Enacted Legislation Acts 1977, No. 317, § 1 *with* Enacted Legislation Acts 2014, No. 750, § 1.

(W.D. La. Mar. 25, 2009) (citing *Carriere v. Pee Wee's Equip. Co.*, 364 So.2d 555, 557 (La. 1978)). "[T]echnical deficiencies … will not defeat the imposition of statutory penalties designed to enforce prompt payment." *Carriere,* 364 So.2d at 557.

If the plaintiff brings a "well-founded" suit to recover unpaid wages, an award of reasonable attorney fees is mandatory. La. R.S. § 23:632(C). A suit is considered "well-founded" where the employee successfully recovers unpaid wages. *Taylor v. Washington Mut., Inc.*, No. 4-521, 2011 WL 98838, at *11 (W.D. La. Jan. 12, 2011).

### C. Attorney Fees

In diversity cases, the substantive award of attorney fees is governed by state law. *Atari v. McNeal*, No. 00-1835, 2002 WL 221613, at *1-2 (E.D. La. Feb. 8, 2002) (citing *Perkins State Bank v. Connolly*, 632 F.2d 1306 (5th Cir. 1980)). There is a "strong implication" that the Fifth Circuit prefers to follow state fee-setting requirements in cases involving state substantive law. *Id*. at *2 (examining several Fifth Circuit cases that deferred to state guidelines); *see also Gulf Union Indus., Inc. v. Formation Sec., Inc.*, 842 F.2d 762, 767 (5th Cir. 1988). Under Louisiana law, attorney fees may be set on a contingency basis if the resulting fee is reasonable. *Taylor v. Prod. Servs., Inc.*, 600 So.2d 63, 66 (La. 1992). Factors to consider in determining the reasonableness of the fee are: "(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge." *Hollybrook Cottonseed Processing, LLC, v. Am. Guarantee & Liab. Ins. Co*., 662 F. App'x 282, 285 (5th Cir. 2016) (quoting *State Dep't of Transp. & Dev. v. Williamson*, 597 So.2d 439, 442 (La. 1992)).

Even where the record does not detail the time and cost of an attorney's services, a court may nonetheless fix the fee from the record. *Treogel v. Performance Energy Servs., LLC*, No. 18-1051, 2020 WL 4370881, at *15 (M.D. La. July 30, 2020) (citing *Molina v. Oilfield Prod. Contractors, Inc.*, 241 So.3d 337, 342 (La. App. 1st Cir. 2017)); *see also Lewis v. Jenkins*, 20-333, 2021 WL 1290635, at *2 (La. App. 4th Cir. 2021); *Stanley v. Crowell & Owens, LLC*, 175 So.3d 1204, 1207-08 (La. App. 3rd Cir. 2015), *Chesterfeld v. Genesis Hospice, LLC*, 137 So.3d 22, 25 (La. App. 1st Cir. 2013); *Mitchell v. Turner*, 588 So.2d 1305, 1308 (La. App. 2nd Cir. 1991). A court may use its discretion in calculating attorney fees, and "does not have to hear evidence concerning the time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered." *Hooper v. Louisiana Pigment Co., LP*, 298 So.3d 810, 835-36, (La. App. 3rd Cir. 2020), *reh'g denied* (July 1, 2020). Moreover, when the nature and extent of services are clear upon the record, "it is the duty of the court to bring to bear its knowledge of the value of the services of counsel and to fix the value even in the absence of expert testimony." *Id.* (citing *Mitchell*, 588 So.2d at 1308).

### III.
#### APPLICATION OF THE LAW TO THE FACTS

Eleven of the twelve plaintiffs herein attach to their motion an affidavit stating what was his or her earnings at the time Aeroframe discontinued its business. Doc. 77, atts. 4-14. Plaintiff Eric Martin failed to file an affidavit and, accordingly, has failed to meet his burden of proof on his entitlement to wages. He will be given an additional opportunity to correct that oversight (?) or risk a recommendation his claim be dismissed for failure to prosecute..

With respect to the remaining plaintiffs, their Statement of Uncontested Facts declares that plaintiffs made written demand on Aeroframe for their wages, which demand remains unanswered. Doc. 77, att. 2, p. 2. Eleven of the twelve plaintiffs attach their employment contracts with Brown

obligating them to pay Brown one-third of the amounts collected in attorney fees.[7] *Id.*, att. 15. Accordingly, all plaintiff-employees except plaintiff-employee Martin have met their burden of setting forth specific facts and demonstrating the lack of a genuine issue for trial on their claims. See *Tubacex,* 45 F.3d at 954.

Aeroframe filed a Memorandum in Opposition. Doc. 80. In its Statement of Uncontested Material Facts, Aeroframe "does not dispute that Plaintiffs were employees of Aeroframe, and that some money is likely still owed each plaintiff for their work with Aeroframe." Doc. 80. att. 1, p. 1. Aeroframe provides no summary judgment type evidence that would indicate that there is an issue of material fact with respect to the figures set forth by the eleven plaintiffs who have met their initial burden of proof.

Aeroframe states that it is "unable to confirm or deny the exact amount of wages currently due and owed to each plaintiff." Doc. 80, p. 5. Aeroframe has ***not*** sought relief pursuant to Rule 56(d) of the Federal Rules of Civil Procedure which provides as follows:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>     **(1)** defer considering the motion or deny it;
>     **(2)** allow time to obtain affidavits or declarations or to take discovery; or
>     **(3)** issue any other appropriate order.

What Aeroframe did do was file a Motion for Leave of Court to Conduct Discovery Relative to the Wage Claims in *Ashford 2.* 19-cv-610, doc. 106. There Aeroframe asked for leave to have ATS (a stranger to these claims):

> [c]opy and produce all Aeroframe employee files, payroll information, and

---

[7] The contingency fee contract of plaintiff Roger Paris is not attached. However, Roger Paris does testify in his affidavit that he hired Brown to pursue his wage claim on a one-third contingency basis. Doc. 77, att. 9. As such, there is competent summary judgment evidence establishing the fact that Brown's fee would be one-third of Roger Paris' recovery.

> employee benefit information relative to to [sic] these Aeroframe employees. This information shall include time sheets or pay logs for the last eight (8) weeks of employment, records related to accrued vacation or sick leave benefits of each of these employees, and records of any other benefit to which each of these employees may be entitled

19-cv-160, doc. 106, att. 2. Aeroframe stated in its motion that it had no access to the records as they had been "seized" by ATS.

ATS opposed the request. It pointed out, among other things, that what was "seized" from Aeroframe was Aeroframe's computers which, in truth (according to ATS), were voluntarily transferred to ATS as part of a Strict Foreclosure Agreement between the two. 19-cv-610, doc. 108, pp. 5-6. ATS stated that

> [n]either ATS nor its counsel have ever looked at the information on the Aeroframe computers. Rather, they have preserved the information on the computers as part of a litigation hold. As a result, neither ATS nor its counsel know what is contained in the computers.

*Id.* at p. 6. We learn by implication that ATS does not possess a cache of Aeroframe documents—ATS only holds the computers themselves.

Attached to ATS's opposition to Aeroframe's request was a declaration prepared by a representative of the third-party custodian that detailed the level of work necessary for it to attempt to respond to Aeroframe's request. 19-cv-610, doc. 108, att. 1. The declaration states:

> In order to determine the electronic information stored on the 13 computer images including an additional 12 copies of work product, it would require mounting each image to produce file/directory listings at an estimated cost of $8,750. Additional time will be required based on these findings to provide additional details concerning the discovered data. This will provide a baseline inventory of what data types are being stored on the computer images.
>
> Payroll information can be stored in various formats and on various platforms to include online cloud solutions. Without knowing the specific program used it may be difficult or impossible to identify financial data. Typically, financial data is password protected and usually requires the specific version of accounting software used at the time it was active in

> order to access the data and produce payroll reporting information. If an online payroll system was being used then this specific information may not be stored locally on any of the computer images.

*Id.*

We concluded that Aeroframe was entitled to the information it sought but not through the mechanism it requested. 19-cv-610, doc. 109. We saw no justification in requiring ATS to incur the expense of sorting through Aeroframe's electronic records found on Aeroframe's own computers to locate the information sought. Instead we concluded "Aeroframe may make arrangements with the third-party custodian of the computers, Business Intelligence Associates, Inc., to obtain a copy of any or all of the hard drives at its own expense, after which point it can access any records it deems appropriate." *Id.* at pp. 3-4. Aeroframe sought no relief from the district court on this ruling.

In its opposition to the plaintiff-employee motion before us, Aeroframe characterizes our ruling as a "refus[al] to allow discovery upon opposing party, ATS." Doc. 80, p. 5. ATS is not an "opposing party" to the claim between plaintiff-employees and Aeroframe under the Louisiana Last Paycheck Law and neither did we refuse to allow it access to the information it sought. The crux of Aeroframe's complaint about our proposed solution was that the cost of the solution ($7500) was too dear.[8] Aeroframe did offer to have ATS "forward to [Aeroframe counsel] the hard drives and [he would] facilitate the task here locally, and return the original hard drives as soon as the task is complete." Doc. 80, att. 3, p. 1. Unsurprisingly, ATS declined the suggestion. *Id.* at p. 2.

Aeroframe had its opportunity to obtain the information it says it needed to defend against the employees' wage claims and it chose to not to so. Neither has it sought any other vehicle for

---

[8] We acknowledge this amount is not insignificant but, considering the expense already incurred in all Aeroframe-related litigation, we do not find it to be overwhelming.

obtaining information it claims it needs to defend itself, such as discovery from the plaintiff-employees, its own former accountants, former banks, or its previous filings with federal or state agencies that would detail wages paid. Aeroframe has no valid excuse for its lack of summary judgment type evidence to refute the claims of the plaintiff-employees.

Aeroframe relies on the alleged reprehensible conduct of ATS to spare it from payment of statutory penalties.[9] As we note above, the Louisiana Last Paycheck Law had no good faith exception for imposition of penalties at the time this suit was filed.[10] Even if such an exception existed, however, the alleged conduct of ATS does not explain why Aeroframe did not have sufficient funds on deposit to make its payroll.

Aeroframe also claims the plaintiff-employees have failed to meet their burden of proving how much each employee is entitled to receive as attorney fees. Aeroframe's argument assumes it is incumbent upon each plaintiff-employee to produce a tally of the number of hours reasonably expended on the claims so that the court may "decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in *Johnson v Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)." Doc. 80, p. 12 (quoting *King v. Univ. Healthcare Sys., L.C.,* 8-1060, 2009 WL 3740640, at \*6 (E.D. La. Nov. 4, 2009), *aff'd in part, vacated in part, rev'd in part*, 645 F.3d 713 (5th Cir. 2011)).

---

[9] That nefarious conduct has only been alleged and never proved. ATS filed a Motion for Summary Judgment against all non-ATS litigants in *Ashford 2*, 19-cv-610, doc. 92. It attached to is motion  appropriate summary judgment type evidence that showed no issue of material fact existed for a trier of fact to consider that would support any claim against ATS by any non-ATS litigant. Neither Aeroframe, the plaintiff-employees, nor Roger Porter produced evidence to substantiate inferences and allegations they made in their pleadings (only Porter made inferences. The plaintiff-employees obtained their information from Porter—see doc. 62, p. 20 (Report and Recommendation on Motions to Remand, adopted by the district court at doc 69)—and Porter and Aeroframe are one in the same, (*Id.* at p. 7)). Failure of the non-ATS litigants to show any issue of material fact as to any matter that would support a judgment for reasons claimed in their pleadings led us to recommend to the district court that all claims against ATS be dismissed. 19-cv-610, doc. 111. That recommendation has been adopted by the district court. *Id.*, doc. 119.
[10] See fn. 6.

We note that Louisiana's specific reasonableness factors are "substantially similar" to the *Johnson* factors associated with the federal lodestar method. *See Luv N' Care, Ltd. v. Rimar*, No. 15-2349, 2017 WL 127464, at *2 (W.D. La. Jan. 12, 2017). However, we find the facts before us do not warrant the use of the time-calculation step of the lodestar method. As discussed, Louisiana law does not require a court to examine the time and cost of an attorney's services in awarding a reasonable fee. *See Treogel*, 2020 WL 4370881, at *15. We therefore find that it was unnecessary for plaintiffs' attorney to submit a log of hours expended on this matter, and the court may fix a reasonable fee based upon the parties' contingency fee agreement and the extensive record before us.

Each plaintiff-employee either produced a copy of his or her contingency fee agreement with counsel or testified to the agreement's existence via affidavit. Doc. 77, atts. 9, 15. From the terms of the agreements the amount of attorney fees owed for each plaintiff is readily ascertainable, i.e. one-third of the amount awarded. Counsel for plaintiff-employees argues that, "[i]n light of the relatively low amount in controversy, this one-third fee arrangement is particularly reasonable—an hourly rate would no doubt have resulted in a much higher fee than the one sought here." Doc. 77, att. 1, p. 8. We agree and find that a one-third arrangement is reasonable under the factors from *Williamson*. 597 So.2d at 442.

Before this case was consolidated with the lead case, *Ashford 2*, Brown filed the original petition, issued a notice of corporate deposition and a request for production of documents and depositions of ATS employees took place in Seattle, Washington. Doc. 1, att. 1, p. 140; *See also* 19-cv-610, Doc. 25, att. 1, p. 21, 273. Both Brown and her law partner, Thomas A. Filo ("Filo") of the Cox Firm appeared at those depositions on behalf of the plaintiffs. 19-cv-610, Doc. 25, att. 1, p. 22. The depositions indicated that Filo—who at that time had not enrolled as counsel for any

of the parties—conducted questioning on behalf of all non-ATS litigants. *Id.*, pp. 21-353. Additionally, Brown pursued a Motion to Remand, filed a Response to ATS's Motion for Summary Judgment, and filed Objections to our Report and Recommendation on the Motion to Remand. Docs. 1, 12, 27, 40, 67, 68.[11] Measured at an hourly rate, the cost of such legal services for each plaintiff would likely exceed one-third of each plaintiff's recovery.

This conclusion is further supported by an affidavit executed by Brown in February of 2019 in a separate state court litigation wherein she testified that $300 per hour would be an appropriate billing rate for her. *See Ashford 1,* 14-cv-992, Doc. 299, att. 6, p. 3. That affidavit was submitted by ATS as evidence of an appropriate hourly rate for ATS's own counsel's fees for us to consider in an award for sanctions ordered in *Ashford 1*. Additionally, between May 1, 2014, and July 31, 2020, ATS was billed and has paid for 3,831.85 and 482.9 hours of service by the two law firms representing it in all plaintiff-employee litigation, for total fees of over $1.5 million incurred by it during that period. *Id.*, att. 1, pp. 6-8; atts. 10, 12, 13.

Considering the foregoing factors we find that the contingency fee charged by Brown for services rendered to each plaintiff-employee is reasonable and should be awarded to each plaintiff as prayed for.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiffs' Motion for Summary Judgment [doc. 77] be **GRANTED** as to claims of plaintiffs for wages, penalties and attorney fees as follows:

> (1) In favor of **KEITH COOLEY** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **THIRTY-THREE THOUSAND THREE HUNDRED AND THIRTY-THREE AND 33/100**

---

[11] Although a Motion to Remand was filed under this docket number, the remand issue was fully litigated in *Ashford 1* (14-cv-992) and *Ashford 2* (19-cv-610) for the benefit of all plaintiff-employees, including those in this matter.

*($33,333.33) DOLLARS*, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,500.00, a penalty of $22,500.00, and attorney fees of $8,333.33;

(2) In favor of **KOURIE DONAHOO** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **NINETEEN THOUSAND SIX HUNDRED AND TWENTY-SIX AND 67/100 ($19,626.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,472.00, a penalty of $13,428.00, and attorney fees of $4,906.67;

(3) In favor of **DONALD R. HEBERT** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **THIRTY-EIGHT THOUSAND FOUR HUNDRED AND FORTY-TWO AND 67/100 ($38,442.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,883.20, a penalty of $25,948.80, and attorney fees of $9,610.67;

(4) In favor of **JAKE MANISCALCO** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **THIRTY-EIGHT THOUSAND FOUR HUNDRED AND TWENTY AND 05/100 ($38,420.05) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,881.54, a penalty of $25,933.50, and attorney fees of $9,605.01;

(5) In favor of **ELMER NICK, JR.** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **TWENTY-SIX THOUSAND FIVE HUNDRED SIX AND 67/100 ($26,506.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,988.00, a penalty of $17,892.00, and attorney fees of $6,626.67;

(6) In favor of **ROGER PARIS** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **TWENTY-SIX THOUSAND SIX HUNDRED AND SIXTY-SIX AND 67/100 ($26,666.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,000.00, a penalty of $18,000.00, and attorney fees of $6,666.67;

(7) In favor of **JASON SOILEAU** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **TWENTY-FIVE THOUSAND AND NINETY-THREE AND 33/100 ($25,093.33) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,888.00, a penalty of $16,992.00, and attorney fees of $6,293.33;

(8) In favor of **TERRA SOILEAU** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **SEVENTEEN THOUSAND NINE HUNDRED SEVENTY-THREE AND 33/100 ($17,973.33) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,348.00, a penalty of $12,132.00, and attorney fees of $4,493.33;

(9) In favor of **JOHN UPMEYER** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **TWENTY-NINE THOUSAND AND SIXTY-SIX AND 67/100 ($29,066.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $2,180.00, a penalty of $19,620.00, and attorney fees of $7,266.67;

(10) In favor of **KARL WARD** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **SEVENTEEN THOUSAND AND SIXTY-SIX AND 67/100 ($17,066.67) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,280.00, a penalty of $11,520.00, and attorney fees of $4,266.67;

(11) In favor of **JONATHAN WILSON** and against **AEROFRAME SERVICES, LLC,** in the full and true sum of **SEVENTEEN THOUSAND THREE HUNDRED THIRTY-THREE AND 33/100 ($17,333.33) DOLLARS**, with judicial interest thereon from date of judicial demand until paid, representing unpaid wages in the amount of $1,300.00, a penalty of $11,700.00, and attorney fees of $4,333.33;

Due to his failure to submit an affidavit in support of his claim, it is further **RECOMMENDED** that the request for summary judgment made by Eric Martin be **DENIED** without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428–20 (5th

Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez*, 828 F. App'x 224, 2020 WL 6478502 (5th Cir. 2020) (unpubl.).

THUS DONE AND SIGNED in Chambers this 27th day of July, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE